UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jean Francois Damon
and Jacqueline Damon,

Plaintiffs,

v.

Daniel Groteboer, *et al.,*

Defendants.

Civil No. 10-92 (JRT/FLN)

**ORDER** & **REPORT AND RECOMMENDATION**

---

Steven J. Weintraut for Plaintiffs.
Sten-Erik Hoidal, Todd A. Wind for Defendants.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on May 10, 2010 on the Defendants' Motion to Dismiss [#13] and Plaintiffs' Motion to Amend/Correct Amended Complaint [#26]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that the Defendants' motion to dismiss be granted in part and denied in part, and that the Plaintiffs' motion to amend be granted.

### I. BACKGROUND

For purposes of the instant motion to dismiss, the following facts in the Second Amended Complaint[1] are to be accepted as true.[2] Plaintiffs Jean Francois Damon and Jacqueline Damon

---

[1] The Court finds that the Plaintiffs have shown good cause to amend the Amended Complaint, and further finds that

1

are a married couple who purchased the commercial property in Rochester, Minnesota that is at the center of this dispute. (2d Am. Compl. ¶¶ 1, 30, 48, 60.)

### A. The Defendants

#### 1. *Daniel Groteboer, Merl Groteboer, RE/MAX and Northwest Executive Brokerage*

Defendant Daniel Groteboer is a licensed real estate agent for Defendant RE/MAX, a real estate sales agency. (2d Am. Compl. ¶ 4.) Defendant Merl Groteboer is Daniel Groteboer's father, and also a licensed real estate agent for RE/MAX. (2d Am. Compl. ¶ 4.) Additionally, Merl and Daniel Groteboer are both listed as employees of Defendant Northwest Executives Brokerage. (2d Am. Compl. ¶ 5.)[3]

#### 2. *The Compark LLC Defendants*

Defendant Compark, LLC ("Compark") is a Minnesota limited liability company operating out of an address on Greenview Drive, SW in Rochester, Minnesota. (2d Am. Compl. ¶ 6.) Defendant Compark 6-2, LLC ("Compark 6-2") is a Minnesota limited liability company operating out of the same address. (2d Am. Compl. ¶ 7.) Compark was formed in December 2004 and has at least 15 LLC members (also named defendants.) (2d Am. Compl. ¶¶ 6, 42.) Compark 6-2 was formed in August 2005, with Compark as its sole member. (2d Am. Compl. ¶¶ 25, 45.)

Merl Groteboer is the Chief Manager and President of both Compark and Compark 6-2.

---

the proposed amendments in the Second Amended Complaint are not futile. Therefore, the Plaintiffs' Motion to Amend/Correct Amended Complaint [#26] is granted.

[2] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994).

[3] These four Defendants are not parties to the instant motion to dismiss. The counts in the Second Amended Complaint that refer only to Daniel Groteboer, Merl Groteboer, RE/MAX and Northwest Executives Brokerage (Counts 12 and 13) are therefore not at issue for purposes of the motion to dismiss.

(2d Am. Compl. ¶¶ 42, 45.) Daniel Groteboer holds an ownership interest in Compark as an LLC member. (2d Am. Compl. ¶ 42.)

### 3. *The LLC Member Defendants*

The remaining defendants are the individuals who hold ownership interests in Compark and are thus LLC members of Compark. (*See* Docket; 2d Am. Compl. ¶ 24.) Together, Compark, Compark 6-2, and the LLC members brought the instant motion to dismiss, arguing that the Second Amended Complaint fails to sufficiently connect the Compark LLCs and the LLC members to the conduct alleged.

### B. **Events Leading Up to the Plaintiffs' Real Estate Transaction**

In August 2005, Plaintiffs were interested in purchasing commercial property in Rochester, Minnesota. As Plaintiffs were then residing in France, they looked for a real estate broker to help them. (2d Am. Compl. ¶ 30.) After being referred to Merl Groteboer, Plaintiffs called him on August 31, 2005. Plaintiffs ended up meeting with Merl Groteboer's son, Daniel Groteboer, on September 1 or 2 of 2005. (2d Am. Compl. ¶ 31.) Subsequently, on September 7, 2005, Daniel Groteboer took Plaintiffs to a vacant development site and showed them architectural plans for the proposed "Sienna Square" office condominiums. The condos were part of a larger development site containing locations marked for U.S. Bank, Perkins, and Green Mill. (2d Am. Compl. ¶ 35.) Daniel Groteboer proposed that Plaintiffs purchase a yet-to be constructed condo building within the development, which would contain four condo units. (2d Am. Compl. ¶ 36.) Daniel Groteboer represented to Plaintiffs that the condo building would achieve an annual net rental income of $96,800, or $24,200 per unit. These figures represented a

7.8 percent rate of return on Plaintiffs' proposed investment. Daniel Groteboer also represented that each of the four condos would consist of 1,802 square feet. (2d Am. Compl. ¶ 37.)

Daniel Groteboer made the following representations to Plaintiffs during the September 7, 2005 meeting : 1) He and Merl Groteboer, through RE/MAX, would market the condos for the entire development and would begin by marketing Plaintiffs' condo building; 2) Daniel Groteboer already had very strong leads on tenants for the condo building, including a tenant affiliated with the Mayo Clinic; 3) The condo building would be the most attractive rental opportunity in the development because it was closer to the road than the other buildings; 4) There was "no doubt" that Daniel Groteboer could fill the condos with tenants in one year; and 5) Closing would occur in February 2006. (2d Am. Compl. ¶ 38.) Daniel Groteboer also promised that the seller of the property upon which the condo building would be constructed would provide a one-year rent guarantee in the amount of $96,800. (2d Am. Compl. ¶ 39.)

Also during the September 7 meeting, Daniel Groteboer filled out a Commercial-Industrial Purchase Agreement ("Agreement"), which he filled in with the proposed purchase price of $1,210,000 ($410,000 down, and $800,000 to be paid at closing on January 6, 2006.) [4] Although the Agreement lists the property to be sold as 2765 Commerce, the property ultimately conveyed was 2778 Commercial Drive, A through D ("Property.") (2d Am. Compl. ¶ 40.) Additionally, Daniel Groteboer told Plaintiffs that he could help them obtain financing for the $800,000 portion of the purchase price at 6.5 percent because Merl Groteboer was on the board of several banks. (2d Am. Compl. ¶ 47.) He further misrepresented to Plaintiffs that Compark was primarily owned by Daniel Penz of Elcor Construction, a reputable businessman. (2d Am.

---

[4] The Court notes that the Second Amended Complaint lists conflicting dates for the proposed closing – both January

4

Compl. ¶ 41.) Based on all of Daniel Groteboer's representations and in reliance on them, Plaintiffs agreed to purchase the Property and signed the Agreement on September 7, 2005. Plaintiffs also wrote a check for $20,000 in earnest money. (2d Am. Compl. ¶ 48.)

The Agreement identifies Daniel Groteboer and Merl Groteboer as agents for both the buyer and the seller. While the seller's lines were unsigned and unmarked on the Agreement, Daniel Groteboer told Plaintiffs during the September 7, 2005 meeting that Compark was the seller. Compark had acquired the land for the entire development, including the Property, in January 2005 for less than $500 via quit claim deed. (2d Am. Compl. ¶ 44.)

On or about September 14, 2005, Daniel Groteboer emailed Plaintiffs, stating that Associated Bank was able to finance the $800,000 loan at 6.5 percent, but that the rate was valid for only 60 days. Daniel Groteboer further stated that the condo building on the Property could be completed within 60 days. However, he stated that the closing date for the Property needed to be earlier than the January 6, 2006 date in the Agreement. (2d Am. Compl. ¶ 49.)

A month later, on October 14, 2005, Compark conveyed the land for the entire development, including the Property, to Compark 6-2 for less than $500 via quitclaim deed. (2d Am. Compl. ¶ 50.) Plaintiffs were not provided notice of this conveyance and did not agree to the conveyance. (2d Am. Compl. ¶ 125.)

On or about November 7, 2005, Daniel Groteboer informed Plaintiffs that closing was scheduled for November 15, 2005. He again stated that the 6.5 percent interest rate from Associated Bank was only valid for 60 days, through November 14, 2005. (2d Am. Compl. ¶ 51.) Plaintiffs later learned that this statement was untrue because Associated Bank had not

---

6, 2006 and February 2006. However, this conflict is immaterial.

placed a 60-day limit on the 6.5 percent rate and did not require that the closing take place by November 14, 2005. (2d. Am. Compl. ¶ 52.)

Daniel Groteboer and Merl Groteboer also represented to Plaintiffs that Associated Bank was conducting the appraisal for the Property. On or about November 17, 2005, Plaintiffs heard from Associated Bank Vice President Paul Olberding that the bank had received the appraisal of the Property and that the appraisal review department confirmed an appraisal value of $1,257,000. (2d Am. Compl. ¶ 53.)

Daniel Groteboer arranged to have attorney Daniel Berndt represent Plaintiffs during the purchase of the Property, but did not disclose to Plaintiffs that Berndt was the organizer of both Compark and Compark 6-2. (2d Am. Compl. ¶ 57.)

Prior to closing, on or about November 17, 2005, Plaintiffs requested that Daniel Groteboer clarify the process of the one-year rent guarantee, the management of the Property and condo building, and the status of searching for tenants. In response, on November 18, 2005, Daniel Groteboer identified Steve Seymour and S & L Leasing as the leasing agent, and stated that Seymour "will be helping" with the renting process. (2d Am. Compl. ¶ 58.) Daniel Groteboer also stated that he and Merl Groteboer had signs advertising for tenants, that the condos had already been shown, and that Daniel and Merl Groteboer "will also assist" with the renting process. (2d Am. Compl. ¶ 59.)

Based on the representations and promises of Daniel and Merl Groteboer, and in reliance on them, Plaintiffs closed on the Property for $1.21 million on November 18, 2005. Plaintiffs paid $425,596.96 in cash and entered into a loan agreement with Associated Bank for $794,450. At the closing, Compark 6-2 conveyed the Property and the condo building to Plaintiffs. (2d

Am. Compl. ¶ 60.)

## C. After The Closing

After Plaintiffs purchased the Property, they realized that Daniel and Merl Groteboer were not going to honor the promises made prior to the purchase. (2d Am. Compl. ¶ 61.) Between January and May of 2006, Daniel Groteboer repeatedly represented that the condo building was being shown to potential tenants and would be leased. (2d Am. Compl. ¶ 62.) Plaintiffs continued to express their concern to Daniel Groteboer that there were no tenants in the building, especially in light of the fact that the one-year rent guarantee was set to expire on November 15, 2006. Plaintiffs told Daniel Groteboer that they might not be able to continue making payments on their Associated Bank loan after that date. (2d Am. Compl. ¶ 63.) Although Daniel Groteboer stated on or about December 12, 2006 that Compark 6-2 agreed to extend the rent guarantee for a "couple extra payments," no extra payments were ever made. (2d Am. Compl. ¶ 64.)

On or about December 14, 2006, Plaintiffs learned that all of the units in the condo building contained over 150 fewer square feet than the agreed-upon 1,802 square feet. This shortage reduced the income Plaintiffs could potentially achieve. (2d Am. Compl. ¶ 65.) On December 15, 2006, Daniel Groteboer for the first time communicated to Plaintiffs that it could be difficult to lease the units in the condo building, stating that the Rochester rental market "got very soft over the last eight months." (2d Am. Compl. ¶ 66.)

Plaintiffs state that Daniel and Merl Groteboer, RE/MAX, and Northwest Executives Brokerage have financial interests in competing properties that they attempted to fill with tenants, making it difficult for them to fill Plaintiffs' Property with tenants. (2d Am. Compl. ¶

67.) Plaintiffs further state that Daniel and Merl Groteboer never marketed the Property despite their representations. (2d Am. Compl. ¶ 68.)

Plaintiffs also learned much later that the Property appraisal had actually been conducted by Twin Cities appraiser Scott Renne – not Associated Bank. In April 2009, Plaintiffs learned that Renne had been facing criminal charges for alleged fraudulent appraisals and kickbacks to bankers and other individuals in connection with the Town Center Development in Ramsey, Minnesota. Plaintiffs also learned that Renne committed suicide in May 2007. (2d Am. Compl. ¶ 54.) Moreover, Plaintiffs learned that the Renne appraisal significantly overstates the value of the building. (2d Am. Compl. ¶ 55.) Neither Daniel nor Merl Groteboer had an appraisal conducted to aid or guide Plaintiffs in their analysis, they never suggested to Plaintiffs that they have the condo building appraised, and they never provided a copy of the Renne appraisal to Plaintiffs prior to closing. (2d Am. Compl. ¶ 56.)

Compark (the seller listed on the Agreement) and Compark 6-2 (the entity that actually conveyed the property at closing) have retained the benefits of the transactions with Plaintiffs, including the $1.21 million purchase price. (2d Am. Compl. ¶ 72.)

Plaintiffs specifically allege in the Second Amended Complaint that Daniel and Merl Groteboer were agents for the sellers of the Property – Compark and Compark 6-2. (2d Am. Compl. ¶¶ 69-70.) Plaintiffs also allege that at all relevant times Daniel and Merl Groteboer acted within the scope of the actual authority granted to them by the Compark LLCs to act as the agents for the Compark LLCs with respect to the sale of the Property and the condo building. Furthermore, pursuant to the terms of the Agreement, by closing on the sale, and by performing the rent guarantee, the Compark LLCs held Daniel and Merl Groteboer out as having the

authority to act on behalf of the Compark LLCs. (2d Am. Compl. ¶ 71.) Additionally, Plaintiffs allege that all of Daniel and Merl Groteboer's representations and conduct with respect to the sale of the Property and the condo building are imputed to Compark and Compark 6-2. Finally, via Plaintiffs' piercing the corporate veil claim, Plaintiffs allege that Daniel and Merl Groteboer's representations and conduct are imputed to the LLC members of Compark and the LLC members of Compark 6-2. (2d Am. Compl. ¶ 73.) As stated above, the Defendant Compark LLCs and the Defendant LLC members argue that the Second Amended Complaint fails to sufficiently connect the LLCs and the LLC members to Daniel and Merl Groteboer's alleged conduct.

## II. STANDARD OF REVIEW

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state

9

a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949. In sum, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where the Court finds that the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," the pleader is not entitled to relief. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

## III.　CONCLUSIONS OF LAW

### A.　Plaintiffs Have Alleged Facts Sufficient to Establish An Agency Relationship

The first issue is whether Plaintiffs have alleged facts sufficient to establish an agency relationship between Daniel and Merl Groteboer and the Compark LLCs. The agency relationship is critical here, as under Minnesota law, a principal is bound by the conduct of an agent that is within the scope of the actual or apparent authority delegated to the agent by the principal. *See Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 457 (Minn. Ct. App. 2001); *see also* Restatement (Second) of Agency §§ 249, 262 (1957) ("A principal is liable for an agent's misrepresentations that cause pecuniary loss to a third party, when the agent acts within the scope of his apparent authority."). Moreover, when a real estate agent makes misrepresentations that induce a sale, and the seller retains the benefits of the sale, the seller is bound by the agent's misrepresentations. *See Swanson v. Domning*, 86 N.W.2d 716, 721-22 (1957). The *Swanson*

court stated:

> When a principal retains the benefits of a contract obtained for him by his agent, he cannot repudiate the acts of the agent which induced the other party to the contract to enter into it on the ground that such acts were unauthorized. By accepting the contract he takes with it whatever taint attached to its origin, and by retaining the fruits of the unauthorized acts he assumes the same responsibility therefor as though they had been done with his authority. One who accepts a sale of property negotiated through the medium of another is bound by the representations made to accomplish the sale.

*Id.*

Defendants' primary argument is that Plaintiffs' agency theory connecting Daniel and Merl Groteboer to the Compark LLCs is not pled with sufficient particularity. The Court disagrees. First, Plaintiffs expressly allege that Daniel and Merl Groteboer were acting within the scope of their actual or apparent authority as agents of both Compark and Compark 6-2. To support this allegation, Plaintiffs state first that Merl Groteboer is the Chief Manager and President of both Compark and Compark 6-2, and that Daniel Groteboer holds an ownership interest in Compark. More significantly, though, the September 7, 2005 Agreement (drawn up by Daniel Groteboer) identifies both Daniel Groteboer and Merl Groteboer as agents for the seller. Plaintiffs allege that Daniel Groteboer stated at the time of signing that Compark was the seller even though, in the end, Compark 6-2 (with Compark as its sole LLC member) conveyed the Property to Plaintiffs at closing. Further supporting Plaintiffs agency theory, the Second Amended Complaint states that Daniel Groteboer made representations at the September 7, 2005 meeting on behalf of the Compark LLCs, promising that the seller would provide a one-year rent guarantee. Then, Daniel Groteboer actually performed the rent guarantee. Later, Daniel Groteboer made additional representations on behalf of the Compark 6-2 with respect to the rent guarantee, stating on or about December 14, 2006 that Compark 6-2 would extend the rent

11

guarantee for a couple of months.  Additionally, Daniel Groteboer conducted the closing for the Property and the condo building on behalf of the Compark LLCs, having arranged for attorney Daniel Berndt to represent Plaintiffs in the transaction.   Finally, Plaintiffs allege that Compark and Compark 6-2 have retained the benefits of the transactions with Plaintiffs.   The Court finds that these allegations, taken together, are sufficient to establish an agency relationship between the Groteboers and the Compark LLCs.

Defendants also argue that Daniel Groteboer acted in numerous capacities – including as an employee of Northwest Executives Brokerage, a real estate broker for RE/MAX, a real estate broker for Plaintiffs, and as the seller's (Compark and Compark 6-2) agent in connection with the sale of the Property – and further argue that since Plaintiffs fail to distinguish between statements made in those various capacities Plaintiffs fail to sufficiently connect Daniel Groteboer's statements to Compark and Compark 6-2.  (Def's Reply Mem. 5.)   This argument fails, as the heart of Plaintiffs' case is the contention that Daniel Groteboer pretended to act as an agent for Plaintiffs' best interests while, in actuality, he was leveraging his other financial and business relationships to defraud Plaintiffs out of $1.21 million.  Under these facts, it is too much for Defendants to ask that Daniel Groteboer's statements be distinguished as between his various employers and principals.  To the contrary, all Plaintiffs must accomplish is to plead factual content that allows the court to draw a reasonable inference that the Daniel Groteboer and Merl Groteboer were acting within the scope of the actual or apparent authority delegated to them by the Compark LLCs.  In light of the facts set forth above, and as the Groteboers are themselves owners and managers of the Compark LLCs, the Court finds that it is reasonable to infer that the Groteboers were acting as agents for Compark and Compark 6-2 at all relevant times.  The Court

therefore finds that the agency relationship between Daniel Groteboer and Merl Groteboer and the Compark LLCs has been alleged with sufficient particularity. *See, e.g., Erickson v. Horing*, No. 99-1468, 2001 WL 1640142, at *11-*13 (D. Minn. Sept. 21, 2001) (Tunheim, J.) (successfully pleaded agency relationship in case involving fraudulent misrepresentations and omissions) (citing *Gunderson v. ADM Investor Servs. Inc*., No. 99-4032, 2000 WL 1154423, at *3 (8th Cir. Aug. 16, 2000) (unpublished opinion)). To the extent that Defendants' motion asks the Court to dismiss Count One (Consumer Fraud), Count Two (Deceptive Trade Practices), Count Three (Common Law Fraud), Count Four (Fraudulent Non-Disclosure), Count Five (Theft Under Minn. Stat. § 604.14), Count Six (Conversion), Count Nine (Negligent Misrepresentation), Count Ten (Unilateral Mistake With Inequitable Conduct), Count Fourteen (Unjust Enrichment) and Count Fifteen (Promissory Estoppel), the motion to dismiss should be denied.

### B. Plaintiffs Have Alleged Facts Sufficient to Establish a Claim for Piercing the Corporate Veil (Count Eight)

The second issue is whether Plaintiffs have alleged facts sufficient to establish a claim for piercing the corporate veil. If Plaintiffs have alleged sufficient facts to support a piercing claim, the Compark LLC members may be held personally liable for claims against Compark. Compark, as the sole LLC member of Compark 6-2, may also be held liable for claims against Compark 6-2. Therefore, the Compark LLC members may also be held personally liable for claims against Compark 6-2.

In Minnesota, determining whether the corporate veil should be pierced requires the application of a two-prong test. *See Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979); *see, e.g., MacDonald v. Summit Orthopedics, Ltd.*, No. 09-1246, 2010

WL 317685, at *5 (D. Minn. Jan. 19, 2010) (Montgomery, J.). Under the first prong of the *Victoria Elevator* test, courts determine whether the corporation functioned as a "mere instrumentality" of the individuals sought to be held personally liable by considering a number of the following factors: insufficient capitalization for purposes of corporate undertaking; failure to observe corporate formalities; nonpayment of dividends; insolvency of debtor corporation at time of transaction in question; siphoning of funds by dominant shareholder; nonfunctioning of other officers and directors; absence of corporate records; and existence of corporation as merely facade for individual dealings. *Id.* Under the second prong, courts analyze whether the party seeking to pierce the corporate veil has established that doing so is necessary to avoid "an element of injustice or fundamental unfairness." *Id.*

Here, Defendants argue that Plaintiffs' Second Amended Complaint fails to allege facts to establish the first prong of the *Victoria Elevator* test – facts demonstrating that Compark and Compark 6-2 functioned as a mere instrumentality of their LLC members. Defendants contend that Plaintiffs rely on a mere recitation of the *Victoria Elevator* factors, and that Plaintiffs have failed to allege enough information to establish the presence of any of these factors. In response, Plaintiffs argue that they have alleged facts to support at least two of the factors: 1) that both Compark and Compark 6-2 were insufficiently capitalized; and 2) that the Compark LLCs were operated as facades for personal business dealings of the LLC members.

In support of the contention that Compark and Compark 6-2 were insufficiently capitalized, the Plaintiffs point to the following allegations: Compark was formed in December 2004. In January 2005, Compark obtained the land for the entire development, including the Property, for less than $500 via quitclaim deed. In August 2005, Compark 6-2 was formed with

14

Compark as its sole member. In September 2005, Daniel Groteboer, on behalf of Compark, entered into the Agreement with Plaintiffs to sell the Property (just a portion of the larger parcel of land obtained for less than $500) for $1.21 million. In October 2005, without notice to Plaintiffs, Compark transferred the land for the entire development, including the Property, to Compark 6-2 for less than $500 via quitclaim deed. In November 2005, Compark 6-2 conveyed the Property to Plaintiffs for $1.21 million. Plaintiffs further allege that the transfers and transactions described above were structured so that a double-layered corporate veil would protect the LLC members, as any potential liability could theoretically be limited to Compark 6-2 (or, at most, to sole Compark 6-2 member Compark, another limited liability entity.) (2d Am. Compl. ¶126.)

The Court finds that these allegations are sufficient to support the reasonable inference that Compark and Compark 6-2 were insufficiently capitalized. In conjunction with the allegations of a series of misrepresentations by Daniel Groteboer (a Compark owner and LLC member) and Merl Groteboer (the Chief Manager and President of Compark and Compark 6-2), these allegations are also sufficient to support the reasonable inference that Compark and Compark 6-2 were operated as facades for personal business dealings of the LLC members.

As Plaintiffs have alleged facts to support two of the eight Victoria Elevator factors, the Court finds that sufficient facts have been alleged to satisfy the first prong of the *Victoria Elevator* test. *See Summit Orthopedics*, 2010 WL 317685 at *5 (denying motion to dismiss, finding that allegations in the complaint establishing the existence of more than one factor under the first *Victoria Elevator* prong provides an adequate factual basis to support a veil-piercing theory).

As to the second prong of the *Victoria Elevator* test, Plaintiffs allege that piercing is necessary to avoid injustice or fundamental unfairness, and the Court finds that this is a reasonable inference based on Plaintiffs' alleged loss of $1.21 million by fraud and misrepresentation. The Court finds that the Second Amended Complaint pleads an adequate factual basis to support Plaintiffs' claim for piercing the corporate veil of both Compark and Compark 6-2. To the extent the Defendants' motion asks the Court to dismiss Count Eight of the Second Amended Complaint, the motion should be denied.

### C. Civil Conspiracy (Count Seven)

The third issue is whether Plaintiffs' claim for civil conspiracy fails to state a claim upon which relief can be granted. To establish civil conspiracy, Plaintiffs must allege the basic facts constituting the conspiracy, the conspiracy's object, and the conspiracy's accomplishment. *Five Smiths, Inc. v. Nat'l Football League Players Ass'n*, 788 F. Supp. 1042, 1048 (D. Minn. 1992) (citing *Baxley-DeLamar Monuments v. Am. Cemetery Ass'n*, 843 F.2d 1154, 1156 (8th Cir. 1988)). General allegations of conspiracy are inadequate to state a cause of action. *Id.*

Plaintiffs allege only: "Defendants, by and through their common understanding, have conspired with each other to commit the wrongs described in this Complaint." (2d Am. Compl. ¶ 117.) This conclusory allegation, without more, is insufficient to state a claim for conspiracy. *See Twombly*, 550 U.S. at 555. Count Seven of the Second Amended Complaint should be dismissed.

### D. Mutual Mistake of Fact (Count 11)

The fourth issue is whether Plaintiffs' claim for mutual mistake of fact fails to state a claim upon which relief can be granted. To establish mutual mistake of fact, Plaintiffs must

allege facts clearly "showing that both contracting parties misunderstood the fundamental subject matter or terms of the contract." *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1084 (8th Cir. 1997) (citing *Dubbe v. Lano Equip., Inc.,* 362 N.W.2d 353, 356 (Minn. Ct. App. 1985)). Plaintiffs' allegations are sufficient to show that the Defendants knowingly made numerous misrepresentations about the Property and the condo building in order to induce Plaintiffs to purchase the Property. However, the allegations in the Second Amended Complaint do not support the reasonable inference that the Defendants, particularly Daniel and Merl Groteboer, were mistaken about the "very nature of the deal." *Id.* Therefore, Plaintiffs fail to state a claim for mutual mistake of fact and Count Eleven of the Second Amended Complaint should be dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss should be granted to the extent it seeks to dismiss Count Seven (Civil Conspiracy) and Count Eleven (Mutual Mistake of Fact) of the Second Amended Complaint. Defendants' motion to dismiss should be denied in all other respects. Plaintiffs' motion to amend the complaint is granted.

## V. ORDER

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Amend/Correct Amended Complaint [#26] is **GRANTED**.

## VI. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Defendants' Motion to Dismiss [#13] be **GRANTED** to the extent it seeks to dismiss Counts Seven and Eleven of the Second Amended Complaint. In all other

respects, the motion to dismiss should be **DENIED**.

DATED: September 24, 2010                               *s/ Franklin L. Noel*
                                                        FRANKLIN L. NOEL
                                                        United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **October 12, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **October 12, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.