# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| JEAN FRANCOIS DAMON and JACQUELINE DAMON, | Civil No. 10-92 (JRT/FLN) |
| Plaintiffs, | |
| v. | |
| DANIEL GROTEBOER; MERL GROTEBOER; RE/MAX OF ROCHESTER; NORTHWEST EXECUTIVES BROKERAGE, INC.; COMPARK, LLC; COMPARK 6-2, LLC; LOWELL PENZ; BRYAN SCHOEPPNER; JOHN WADE; EDWARD LUNN; DARREN GROTEBOER; ALAN SCHAFER; JOEL ALBERTS; JOEL S. LARSON; KENNETH NASH; JEFFREY L. BIGLER; M&L PARTNERSHIP; TJ HALEY, LLC; 4 TP, LLC; JADCO PROPERTIES, *a Minnesota General Partnership*; JADCO PROPERTIES, LLC; SLB SERVICES, LLC; and DOES 1-10, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Steven J. Weintraut and Rachel L. Osband, **SIEGEL, BRILL, GREUPNER, DUFFY & FOSTER, P.A.**, 1300 Washington Square, 100 Washington Avenue South, Minneapolis, MN 55401, for plaintiffs.

Sten-Erik Hoidal and Todd Wind, **FREDRIKSON & BYRON, P.A.**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for defendants.

Plaintiffs Jean Francois and Jacqueline Damon ("the Damons") brought this action seeking recovery for alleged fraudulent conduct and misrepresentations by defendants in connection with the sale of commercial property. Defendants moved to dismiss the claims for failure to state a claim on which relief can be based. (Docket No. 13.) The

matter is before the Court on both parties' objections to the Report and Recommendation of United States Magistrate Judge Franklin L. Noel, dated September 27, 2010. (Docket No. 57.) The Damons object to the Magistrate Judge's recommendation that the Court grant the motion to dismiss their claims for conspiracy and mutual mistake, and defendants object to the Magistrate Judge's recommendation not to dismiss the Damons' claim to pierce the corporate veil.

The Court has conducted a *de novo* review of both parties' objections. *See* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court sustains in part and overrules in part the Damons' objections, overrules defendants' objections, adopts the Report and Recommendation with modifications, and grants in part and denies in part defendants' motion to dismiss.

## BACKGROUND[1]

### I.   PARTIES

At the time of the events giving rise to this lawsuit, the Damons were residents of Boulogne, France. The Damons presently reside in Nairobi, Kenya.

Defendant Daniel Groteboer ("Daniel") and his father Merl Groteboer ("Merl") are licensed real estate agents for defendant RE/MAX, a real estate sales agency, and are listed as employees of defendant Northwest Executives Brokerage. Defendant Compark, LLC ("Compark") is a Minnesota limited liability corporation, as is defendant Compark

---

[1] The facts set forth are a fair representation of the allegations in plaintiffs' Second Amended Complaint. (Docket No. 60.) The Court recites background facts only to the extent necessary to rule on the parties' objections. The Report and Recommendation provides a more comprehensive description of the facts relevant to this case. (*See* Report & Recommendation at 1-9, Docket No. 57.)

6-2, LLC ("Compark 6-2"), which operates out of the same location as Compark. Compark was formed in December 2004 and has at least fifteen LLC members, each of whom is named as a defendant in this action. Compark 6-2 was formed in August 2005 with Compark as its sole member. Merl is the Chief Manager and President of both Compark and Compark 6-2.

## II.     EVENTS LEADING UP TO THE REAL ESTATE TRANSACTION

In August 2005 the Damons sought to purchase commercial property in Rochester, Minnesota. As they resided in France, they sought help from a real estate broker. After being referred to Merl, the Damons called him on August 31, 2005, and later met with Merl's son Daniel on or about September 1 or 2, 2005. Daniel went with the Damons to view a vacant development site (the "Property") on September 7, 2005, and showed them architectural plans for office condominiums. Daniel proposed that the Damons purchase a yet-to-be constructed condominium building within the development that would contain four units. Daniel represented to the Damons that the building would achieve an annual net rental income of $96,800. He also represented that each condominium would be 1,802 square feet.

During the September 7, 2005 meeting, Daniel additionally allegedly made the following representations: (1) he and his father would market the condominiums for the entire development through RE/MAX, and would begin by marketing the Damons' property; (2) he already had "very strong leads" on tenants for the building, which was itself attractive because it was close to a road; (3) there was "no doubt" that Daniel could

- 3 -

fill the condominiums with tenants in one year; and (4) closing would occur in February 2006.  Daniel also promised that the "seller" of the property where the condominiums were to be built would provide a one-year rent guarantee of $96,800, the anticipated annual net rental income.

Also during the meeting, Daniel filled out a Commercial Industrial Purchase Agreement ("Agreement") with a proposed purchase price of $1,210,000 ($410,000 as an initial down payment, and $800,000 to be paid at closing in either January or February 2006).  Though the Agreement lists the property to be sold as 2764 Commerce, the property ultimately conveyed was 2778 Commercial Drive, A through D.

Daniel told the Damons that he could help them obtain financing for the $800,000 required at closing at 6.5 percent interest because Merl was on the board of several banks. The Damons assert that based on Daniel's representations they agreed to purchase the Property, signed the Agreement on September 7, 2005, and gave defendants a check for $20,000 in earnest money.

The Agreement identifies Daniel and Merl as agents for **both** the buyer and the seller.  Though the seller's lines were unsigned on the Agreement, Daniel told the Damons during the September 7, 2005 meeting that Compark was the seller.  Compark had acquired the land for the entire development, including the Property, in January 2005 for less than $500 via quit claim deed.

On or about September 14, 2005, Daniel emailed the Damons, stating that Associated Bank was able to finance the $800,000 loan at 6.5 percent, but that the rate was valid for only sixty days.  He further stated that the condominium building could be

completed in sixty days, but that the closing date for the Property needed to be earlier than the January 6, 2006 date in the Agreement.  A month later, on October 14, 2005, Compark conveyed the land for the entire development to Compark 6-2 for less than $500 via quitclaim deed.  The Damons were not provided notice of this conveyance and did not agree to it.

On or about November 7, 2005, Daniel informed the Damons that closing was scheduled for November 15, 2005, and again stated that the 6.5 percent interest rate from Associated Bank was only valid for sixty days.  However, Associated Bank had not actually placed a sixty day limit on the rate, and did not require that the closing take place by November 14, 2005.

Daniel and Merl represented to the Damons that Associated Bank conducted an appraisal of the property.  On or about November 17, 2005, the Damons received a communication from Associated Bank Vice President Paul Olberding stating that the bank had received the appraisal of the Property, and that the appraisal review department confirmed an appraisal value of $1,257,000.

Daniel arranged to have attorney Daniel Berndt represent the Damons during the purchase of the property, but did not disclose that Berndt was the organizer of both Compark and Compark 6-2.

In response to a request from the Damons on or about November 17, 2005, on November 18 Daniel identified Steve Seymour and S&L Leasing as the leasing agent and stated that Seymour would be "helping with the renting process."  Daniel also represented

that he and Merl had signs advertising for tenants, that the condominiums had already been shown, and that they would "also assist" with the rental process.

The Damons closed on the Property for $1,210,000 on November 18, 2005. They paid $425,596.96 in cash, and entered into a loan agreement with Associated Bank for $794,450 of financing. At the closing Compark 6-2 conveyed the Property and the condominium building to the Damons.

## III.   POST-CLOSING

Between January and May of 2006, Daniel repeatedly represented that the condominium building was being shown to potential tenants and would be leased. However, no tenants signed leases and the Damons expressed their concern about whether the condominiums would be leased, particularly as the one-year rent guarantee was set to expire soon. The Damons informed Daniel that they might not be able to continue making payments on their Associated Bank loan after that date. Although Daniel stated on or about December 12, 2006 that Compark 6-2 agreed to extend the rent guarantee for some number of extra payments, no extra payments were ever made.

On or about December 14, 2006, the Damons learned that all of the units in the condominium building contained over 150 fewer square feet than the agreed-upon 1,802 square feet, which difference reduced the amount of income they could expect to receive from the units. On December 15, 2006 Daniel first told the Damons that it would be difficult to lease the units because the Rochester rental market "got very soft over the last eight months." Despite this assertion, the Damons allege that Daniel and Merl, RE/MAX, and Northwest Executives Brokerage had financial interests in competing

- 6 -

properties that they attempted to fill with tenants first, making it difficult to fill the Damons' property with tenants.  The Damons also allege that Daniel and Merl never marketed the property.

The Damons also subsequently learned that the appraisal had not been conducted by Associated Bank, but instead by Twin Cities appraiser Scott Renne, who had been facing criminal charges for alleged fraudulent appraisals and kickbacks to bankers and other individuals in connection with the Town Center Development in Ramsey, Minnesota.  The Damons then learned that Renne's appraisal significantly overstated the value of the building. Neither Daniel nor Merl suggested to the Damons that they have the condominium building independently appraised or provided a copy of the Renne appraisal to the Damons prior to closing.

The Damons allege that Daniel and Merl were agents for the sellers of the property, and that at all relevant times Daniel and Merl acted within the scope of the actual authority granted to them by the Compark LLCs to act as the agents for them with respect to the sale of the Property and the condominium building.  The Damons further allege that pursuant to the terms of the Agreement, by closing on the sale and by performing the rent guarantee, the Compark LLCs held Daniel and Merl out as having the authority to act on behalf of the Compark LLCs.

The Damons brought this suit against Daniel and Merl, the Compark LLCs and the individual members of the Compark LLCs on January 11, 2010.  (Docket No. 1.) Defendants brought a motion to dismiss the complaint on March 22, 2010.  (Docket No. 13.)  Magistrate Judge Franklin L. Noel issued a Report and Recommendation on

September 27, 2010, recommending that the motion to dismiss be granted as to Counts VII and XI of the Second Amended Complaint, and denied in all other respects. (Docket No. 57.) The parties each filed timely objections on October 26, 2010. (Docket Nos. 61, 64.)

## ANALYSIS

### I.     STANDARD OF REVIEW

Defendants have moved to dismiss this suit for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Although a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, it must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint. *Mensing v. Wyeth, Inc.*, 588 F.3d 603, 605 (8th Cir. 2009).

### II.    OBJECTIONS

The Damons object to the Magistrate Judge's recommendation to dismiss Counts VII and XI of the Second Amended Complaint, arguing that they have pled sufficient facts to demonstrate a conspiracy, and that a mutual mistake was made as to the fundamental subject matter of the Agreement. Defendants only object to the Magistrate Judge's recommendation to deny the motion to dismiss as to Count VIII, piercing the corporate veil, as defendants argue that the complaint failed to allege sufficient facts

suggesting that the Compark LLCs were inadequately capitalized, or that the Compark LLCs were used for the personal dealings of any of its members.

### A.      Conspiracy (Count VII)

To properly plead civil conspiracy, the Damons must allege sufficient facts to allow a reasonable inference that defendants agreed to accomplish an unlawful purpose, and took concerted actions to achieve that purpose. *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880-81 (D. Minn. 2009).  Defendants' actions must also be based on an underlying tort. *Id.*

The Second Amended Complaint states, in relation to civil conspiracy: "Defendants, by and through their common understanding, have conspired with each other to commit the wrongs described in this Complaint." (2d Am. Compl. ¶ 117.)  The Magistrate Judge stated that "[t]his conclusory allegation, without more, is insufficient to state a claim for conspiracy." (Report & Recommendation at 16, Docket No. 57.)

The facts alleged allow the Court to draw the reasonable inference that an agreement existed between at least two defendants to accomplish an unlawful act, and that some conduct towards that act occurred.  The Second Amended Complaint clearly alleges various underlying torts, including consumer fraud, deceptive trade practices, and common law fraud, among others. (2d Am. Compl. ¶¶ 74-99.)  Count VII "restate[s] and reallege[s] all of the [preceding] paragraphs" which include that Merl and Daniel are father and son, and Merl referred the Damons to Daniel in connection with their inquiry about purchasing commercial property. (*Id.* ¶ 116.)  Given Merl's leadership position in Compark, and Compark 6-2, it is a reasonable inference that whatever Daniel was doing

on behalf of either Compark or Compark 6-2 was known to, and endorsed by, Merl. Further, the Damons allege that both Daniel and Merl represented that Associated Bank was conducting an appraisal of the property, when in fact Associated Bank was not and the appraisal was being done by Renne.  Further, the Agreement identifies Daniel and Merl as agents for both the buyer and the seller.  (Purchase Agreement, Aff. of Steven J. Weintraut Ex. 1, Docket No. 24.)

Though the Damons have not explicitly stated what the agreement between defendants was, nor its alleged purpose, the above facts suggest a close working relationship between at least two defendants and are sufficient to allow a reasonable inference that defendants agreed to accomplish an unlawful purpose.  Further, sufficient facts have been alleged as to actions directed towards an unlawful purpose, such as misrepresenting the source of the appraisal and the deadline for the loan, to meet the pleading standard required under Rule 12(b)(6) and *Twombly*.  Accordingly, the Court will sustain the Damons' objection to the recommendation of the Magistrate Judge.

### B.    Mutual Mistake (Count XI)

The Damons argue that the Agreement should be rescinded based on the parties' mutual mistake.  To adequately claim mutual mistake of fact under Minnesota law, the Damons must allege facts allowing the Court to draw a reasonable inference that "both contracting parties misunderstood the fundamental subject matter or terms of the contract."  *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1084 (8th Cir. 1997) (citing *Dubbe v. Lano Equip., Inc.*, 362 N.W.2d 353, 356 (Minn. Ct. App. 1985)).  "Before a

misconception will render a contract voidable, it must be more [than] an error about the monetary value of the consideration; it must go to the very nature of the deal." *Id.*

Though the Damons' allegations are sufficient to show that defendants knowingly made misrepresentations about the Property and the condominium building to induce a purchase, the allegations do not support a reasonable inference that defendants, particularly Daniel and Merl, were mistaken about the "very nature of the deal." Quite to the contrary, the degree of deliberateness of their misrepresentations is the basis for many other of the Damons' claims, and the facts alleged point much more directly to liability based on intentional misconduct. That the value of the Property, or the health of the real estate market in Rochester, was worse than Daniel and Merl represented or expected is not a mistake as to a fundamental condition of the contract; it is at most a mistake as to some future condition, which is not a basis on which to grant rescission for mutual mistake. *See Costello v. Sykes*, 172 N.W. 907, 908 (Minn. 1919) ("A mistake relating merely to the attributes, quality, or value of the subject of a sale does not warrant a rescission."). Therefore, the Damons have failed to state a claim for mutual mistake of fact and the Court overrules their objection in this regard.

### C.     Piercing the Corporate Veil (Count VIII)

Count VIII of the Second Amended Complaint seeks to pierce the corporate veil to allow a determination that the LLCs members are personally jointly and severally liable for any damages the Damons are entitled to recover from either of the Compark LLCs. (2d Am. Compl. ¶¶ 127-128.) Defendants object to the finding of the Magistrate Judge that sufficient facts have been alleged to defeat a motion to dismiss on the Damons'

claims for piercing the corporate veil. In *Victoria Elevator Co. of Minneapolis v. Meriden Grain Co., Inc.*, 283 N.W.2d 509 (Minn. 1979), the Minnesota Supreme Court set out a two-prong test for analyzing claims for piercing the corporate veil. First, the court analyzes whether the corporation functioned as a mere instrumentality of the individuals sought to be held personally liable by considering the following factors:

> [I]nsufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

*Id.* at 512. Second, the court determines whether the party seeking to pierce the corporate veil has established that doing so is necessary to avoid "an element of injustice or fundamental unfairness." *Id.*

"In order to survive a Motion to Dismiss, the [Damons] are not required to plead the factors that are set out in *Victoria Elevator* . . . they merely have to provide the Defendants with notice as to the theory on which they plan to proceed, and of their intent to pierce the corporate veil." *See Murrin v. Fischer*, Civ. No. 07-1295, 2008 WL 540857, at *22 (D. Minn. Feb. 24, 2008) (citing *Barton v. Moore*, 558 N.W.2d 746, 749-50 (Minn. 1997)).

Count VIII of the Second Amended Complaint states: "Piercing of the corporate veil of the Compark LLCs is necessary to avoid injustice or fundamental unfairness." (2d Am. Compl. ¶ 127.) Defendants are clearly on notice of the Damons' intent to prosecute this case in part by attempting to pierce the corporate veil. Because of the clear statement of the Damons' intent, the Court finds it unnecessary to determine whether any of the

*Victoria Elevator* factors have been adequately pled.[2]   However, as noted by the Magistrate Judge, the Damons have set forth some facts relating to the *Victoria Elevator* factors, which if true could support piercing the corporate veil.

## ORDER

Based upon all the files, records and proceedings herein, the Court **SUSTAINS** the Damons' objection [Docket No. 61] as to Count VII, **OVERRULES** Damons' objection as to Count XI [Docket No. 61]; **OVERRULES** defendants' objections [Docket No. 64], and **ADOPTS with modifications** the Magistrate Judge's Report and Recommendation [Docket No. 57] as stated in the Opinion Memorandum.

Accordingly, **IT IS HEREBY ORDERED** that defendants' Motion to Dismiss [Docket No. 13] is **GRANTED in part** and **DENIED in part** as follows:

1.   Defendants' motion is **GRANTED** as to Count XI of the Second Amended Complaint.

2.   Defendants' motion is **DENIED** in all other respects.

DATED:  March 14, 2011          _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.              JOHN R. TUNHEIM
                                     United States District Judge

---

[2] The Court also notes that defendants' proposed rule, that to survive a motion to dismiss a complaint must present facts supporting two or more factors under the first prong of *Victoria Elevator*, is not supported by the case on which defendants rely, *MacDonald v. Summit Orthopedics, Ltd.*, Civ. No. 09-1246, 2010 WL 317685, at *5 (D. Minn. Jan. 19, 2010).  The relevant language from *MacDonald* is "MacDonald has presented allegations that, if true, would establish the existence of more than one factor under the first prong of the *Victoria Elevator* test." *Id.* There is no indication in the opinion, nor citation to any case, suggesting that two or more *Victoria Elevator* factors must be pled to survive a Rule 12 motion.